**In re Vella Ernestine SCOTT, aka Vella Ernestine Cowan, Debtor.**

**Otis B. COWAN, Plaintiff,**

**v.**

**Vella Ernestine COWAN, Defendant.**

**Bankruptcy No. BK–81–00653.
Adv. No. 81–087.**

United States Bankruptcy Court,
W. D. Oklahoma.

July 27, 1981.

Harley E. Venters, Oklahoma City, Okl., for plaintiff, Otis B. Cowan.

Michael Ray Dayton, Del City, Okl., for defendant-debtor, Vella Ernestine Cowan.

## MEMORANDUM OPINION

ROBERT L. BERRY, Bankruptcy Judge.

### Statement of the Case

This adversary proceeding was commenced by Plaintiff's Complaint alleging a security interest in the defendant-debtor's homestead and requesting an order from this Court lifting the automatic stay regarding Plaintiff's pending foreclosure action thereon in state court. In response to Plaintiff's Complaint Defendant filed a Cross-Complaint seeking to avoid Plaintiff's lien under the provisions of 11 U.S.C. § 522(f).

### Facts

Plaintiff Otis B. Cowan and Defendant-Debtor Vella E. Cowan were married on March 25, 1966. During their marriage they acquired a home in joint tenancy and resided therein.

On October 11, 1979, the parties obtained a divorce. At the time of the divorce, the parties' equity in the home was approximately $30,000.00. The divorce decree provided in part:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that defendant [Vella Cowan] be and she is hereby awarded as her share of jointly acquired property of the marriage the following:

(1) The residence of the parties ...

\*       \*       \*       \*       \*       \*

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court, that the defendant is ordered to pay to the plaintiff [Otis Cowan], in lieu of property, the sum of $8,500.00, payable at $50.00 per month commencing on the 15th day of October, 1979, and due on the 15th day of each month thereafter until paid in full.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court,

that plaintiff shall have a judgment lien to secure the aforementioned judgment against the defendant in the amount of $8,500.00, upon the residential real property hereinabove legally described, and awarded to defendant as part of her share of jointly acquired property."

According to the testimony of the various witnesses the aforementioned terms of the Divorce Decree were the result of an agreement between the parties. This agreement was negotiated in an effort to arrive at a fair and equitable division of jointly acquired property without necessitating protracted litigation and its accompanying expense.

After the divorce, Defendant continued to reside in the home but made only one payment to Plaintiff on the $8,500.00 debt. On October 17, 1980, Plaintiff commenced a foreclosure action in state court.

On April 6, 1981, before Plaintiff's foreclosure action was tried, Defendant filed her voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code. Defendant now seeks to avoid Plaintiff's lien on the home under the provisions of 11 U.S.C. § 522(f).

### Law

Defendant relies on 11 U.S.C. § 522(f) which provides in pertinent part:

"Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ... if such lien is—

(1) a judicial lien ... "

Thus, in order for the defendant to prevail under § 522(f), three conditions must be met. First, the lien sought to be avoided must have fixed "on an interest of the debtor in property." Second, the lien must impair "an exemption to which the debtor would have been entitled." And third, the lien must be a "judicial lien."

In House Report 95–595, 95th Cong., 1st Sess., 1977, p. 126, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6087, we find an indication of the congressional reasoning behind § 522(f):

" . . . the bill gives the debtor certain rights not available under current law with respect to exempt property. The debtor may avoid any judicial lien on exempt property, and any nonpurchase money security interest in certain exempt property such as household goods. The first right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions. . . ."

It is clear from the House Report that the intent behind the judicial lien avoidance provisions of § 522(f) is to allow the removal of judicial liens obtained by creditors on a debtor's exempt property. The implication of the House Report, as well as the language of § 522(f) itself which permits the avoidance of "the fixing of a lien on an interest of the debtor in property," is that Congress intended the avoidance of liens that become fixed *after* the debtor acquired the interest upon which they became fixed.

Such is not the case here. The document which gave rise to Plaintiff's lien was the Divorce Decree. It was this same document which operated to convey Plaintiff's interest in the homestead to Defendant. Thus, it may be said that the property was conveyed to Defendant *subject to* Plaintiff's lien to secure the payment of Plaintiff's share of the property settlement.

This situation is somewhat analogous to the situation where property is conveyed subject to a lien to secure the purchase price thereof. According to 31 Okl.Stat. Ann. § 5:

"The exemption of the homestead provided for in this chapter shall not apply where the debt is due:

1. For the purchase money of such homestead or a part of such purchase money."

Defendant claims that Plaintiff's lien impairs an exemption to which she would have been entitled. 12 Okl.Stat.Ann. § 1278 provides for property divisions between the parties to divorce actions as follows in applicable part:

" . . . As to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof. . . ."

The above quoted language has been interpreted in connection with real property division by the Oklahoma Supreme Court in *Lawson v. Lawson*, 295 P.2d 769 (Okl.1956):

"To comply with the statute, the entire title with right of possession to part of the property should have been given to one and the entire title with right of possession to the remainder should have been given to the other. Neither should have been required to account to the other for what he or she did with the property or the income derived therefrom. If one party thereby was awarded property in excess of what the trial court thought he or she was equitably entitled to, *a lien could be established thereon securing the payment of such sum as the court thought necessary to adjust the equities.* In other words, the property awarded to each should be free from the claims or dominion of the other." (Emphasis added)

Thus, the Oklahoma Supreme Court has specifically approved the establishment of a lien on property awarded to one party in a divorce action to secure payment by that party of a sum of money awarded to the opposing party.

As to homestead considerations, in Oklahoma it is recognized that the home-

stead may be treated as other property when a division of property is made in a divorce proceeding. *Williams v. Williams,* 428 P.2d 218 (Okl.1967). In *Haven v. Trammell,* 79 Okl. 309, 193 P. 631 (1920), a divorce decree awarded alimony, attorney's fees and costs to the wife and imposed a lien therefor on all real estate owned by the husband within Oklahoma. Execution was subsequently issued, pursuant to which the husband's lands were levied upon. The husband then attempted to prevent the sale thereof claiming that the land seized under the execution was his homestead and therefore not subject to sale to satisfy any execution or judgment. The Oklahoma Supreme Court, however, allowed the sale to proceed saying:

"1 R.C.L. p. 945, § 91:

'The homestead law is a family shield, and cannot be employed by either spouse to wrong the other. Accordingly it is generally held that a decree for alimony may be declared a lien on the family homestead, even though the title thereof is vested in the husband . . . .'

\*    \*    \*    \*    \*    \*

"In *Blankenship v. Blankenship,* 19 Kan. 159, it is held:

'Upon granting a divorce to the husband by reason of default or aggression of the wife, the court has power to decree the sum allowed as alimony to the wife a lien upon the real estate of the husband, and under such a decree the premises occupied by such husband and wife as a homestead at the date of the decree of divorce may be sold in satisfaction of such lien.'

"In *Blankenship v. Blankenship,* supra, Horton, C. J., speaking for the court, says:

'This court having already decided in *Brandon v. Brandon,* 14 Kan. 342, that upon granting a divorce on account of the fault of the wife, the court has power to award to her the possession of the homestead, necessarily settles the question now presented as to the power of the court to declare the sum allowed

as alimony a lien on all the property of the husband, and to authorize the sale of such property (even if it is a homestead) to satisfy the lien. The power to take the homestead from the husband, and assign the same to the wife, is the exercise of greater power than making a sum allowed as alimony a lien upon all the property of the husband, and ordering the same sold to discharge the lien. The greater power includes the less; and we find no error as to the sale of the homestead; it appearing from the record that the plaintiff in error was possessed of this identical property at the rendition of the judgment.'

"Our divorce laws were taken from Kansas, and the decision in *Blankenship v. Blankenship,* supra, and *Brandon v. Brandon,* supra, were decided long prior to our adoption of our divorce law, and said cases are controlling."

■ In light of the foregoing authorities, it is clear that under State law, the Oklahoma homestead exemption cannot be used to defeat property rights and interests awarded in divorce proceedings to accomplish fair property divisions between the parties thereto. This brings us to the issue of whether the provisions of 11 U.S.C. § 522(f), may be used to avoid a lien on property of the kind exempt under State law when, under the State law, the exemption may not be used to avoid that type of lien.

This issue was faced very recently by the U. S. Bankruptcy Court for the Western District of Louisiana in *In re Babcock,* 9 B.R. 475, 7 B.C.D. 890 (Bkrtcy.W.D.La. 1981). In that case a debtor attempted to avoid a non-purchase money security interest represented by a chattel mortgage on certain household items. Louisiana, like Oklahoma, had taken advantage of the Bankruptcy Code provision allowing states to prohibit the use of the federal exemptions provided in 11 U.S.C. § 522(d). In addition, a Louisiana statute provided that a person who had granted a chattel mortgage on his property described in Louisi-

ana's exemption statute "may not thereafter claim an exemption from the seizure of such property for the enforcement of that mortgage." In its decision not to allow the avoidance of the lien, the court reasoned:

"The key language in 11 U.S.C. 522(f) which allows the debtor to avoid the fixing of a lien on an interest in property to the extent such lien impairs an exemption is: 'to which the debtor would have been entitled under subsection (b) of this section.' This language is important because the power to avoid a lien under 522(f) is linked to 522(b). Section 522(b) is the subsection which gives the power to the States to enact their own exemption statutes and preclude the exemptions provided in 522(d) of the Bankruptcy Code. Therefore, the language in 522(f) which allows the debtor to avoid liens on property 'to which the debtor would have been entitled under subsection (b)' means property exempt under State law when the State has taken the option to prohibit the Bankruptcy Code exemptions in favor of its own exemptions. In this case State law prohibits avoiding a lien on exempt property where there is a valid chattel mortgage. The exempt status of household items under Louisiana Revised Statutes 13:3881 is changed to non-exempt status by 13:3885. The property described in 522(f) is not an exemption to which the debtor is entitled. Thus 522(f) could not apply to this situation."

In *Babcock* the court also considered the question of whether the Louisiana statute prohibiting the exemption on mortgaged property was in conflict with 11 U.S.C. § 522(f) and would thus be superseded by the Supremacy Clause of the United States Constitution. In deciding this question the court relied on that portion of 11 U.S.C. § 522(b) which provides:

"... an individual debtor may exempt from property of the estate either—

\* \* \* \* \* \*

(2)(A) any property that is exempt under ... State or local law that is applicable on the date of the filing of the petition ..."

The court reasoned that § 522(b)(2)(A) specifically authorized such statutes as Louisiana's and concluded that no conflict therefor existed. (Contra: *In re Hill*, 4 B.R. 310, 6 B.C.D. 307 (Bkrtcy.N.D. Ohio, 1980))

As previously seen, Oklahoma law provides an exception to the exemption statute where liens have been established on homestead property to effect property divisions in divorce proceedings. Thus, if the *Babcock's* court's reasoning were to be applied in the instant case, Defendant would be unable to avoid Plaintiff's lien because the lien does not impair an exemption to which Defendant would have been entitled under Oklahoma law.

■ Defendant also claims that Plaintiff's lien is a "judicial lien" of the type Congress intended to be avoidable under § 522(f). The term "judicial lien" is defined by 11 U.S.C. § 101(27):

" 'judicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding;"

11 U.S.C. § 101(37) provides:

" 'security interest' means lien created by an agreement;"

As previously stated, according to the testimony received at the hearing hereon, the award of the residence to Defendant and the monetary award to Plaintiff was the result of an agreement by the parties after negotiations to settle the disputed issue as to what would be a fair and equitable division of the jointly acquired property. This issue has been previously considered by the Honorable David Kline, U. S. Bankruptcy Judge of this district, in *In re Dunn*, 10 B.R. 385 (Bkrtcy.W.D.Okl.1981). In refusing to allow the avoidance of such a lien, Judge Kline said:

"The lien in question is not avoidable under Code § 522(f)(1) for ... it is not an *involuntary* 'judicial lien' within the ambit of Code § 522(f)(1) but consensual and voluntary although judicially sanctioned." (Emphasis supplied.)

Thus, in *Dunn*, the lien was treated more in the nature of a "security interest" or mortgage. In fact, Oklahoma law may

very well require that such a lien be treated as a mortgage. 16 Okl.Stat.Ann. § 31 provides:

"Any judgment or decree of a court of competent jurisdiction finding and adjudging the rights of any party to real estate or any interest therein, duly certified, may be filed for record and recorded in the office of the register of deeds, with like effect as a deed duly executed and acknowledged."

In addition, 46 Okl.Stat.Ann. § 1 provides:

"Every instrument purporting to be an absolute or qualified conveyance of real estate or any interest therein, but intended to be defeasible or as security for the payment of money, shall be deemed a mortgage and must be recorded and foreclosed as such."

There is no doubt that the decree involved herein was rendered by a court of competent jurisdiction. Nor is there doubt that the decree adjudged the rights and interests of the parties as to their real estate. It is also obvious from the words of the decree "that plaintiff shall have a judgment lien to secure the aforementioned judgment against the defendant in the amount of $8,500.00" that the interest conveyed was intended as security for the payment of money.

*Conclusion*

In consideration of the foregoing findings of fact and legal authorities this Court finds that Plaintiff's lien is not avoidable under 11 U.S.C. § 522(f). Accordingly Defendant's request to avoid Plaintiff's lien should be denied and Plaintiff's request to modify the automatic stay to permit him to enforce his lien should be granted. An appropriate Order is issued accordingly.